EXHIBIT A

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
August 20, 2024 02:02 PM
PAVAN PARIKH
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1513418

| | |
|---|---|
| **COURTNEY PUGH** | **A 2403727** |
| **vs.** | |
| **ENSEMBLE RCM LLC** | |

## FILING TYPE:  INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 13

EFR200

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| COURTNEY PUGH<br>275 Upper Grassy Branch Rd<br>Essie, KY 40827 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| ENSEMBLE RCM, LLC<br>11511 Reed Harman Highway<br>Cincinnati, Ohio 45241 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve also:**<br>ENSEMBLE RCM, LLC<br>c/o CT Corporation System<br>Statutory Agent<br>4400 Easton Commons Way, Ste. 125<br>Columbus, Ohio 45219 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Courtney Pugh, by and through undersigned counsel, as her Complaint against

Defendant Ensemble RCM, LLC ("Ensemble"), states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Pugh is a resident of the city of Essie, county of Leslie, state of Kentucky.

2. At all times herein, Pugh was acting in the course and scope of her employment.

3. Ensemble is a domestic limited liability company that operates a place of business located at

   11511 Reed Harman Highway, Cincinnati, OH 45241.

4. Ensemble was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.

   § 12101 *et seq*. and R.C. § 4112.01 *et seq.*

5. All of the material events alleged in this Complaint occurred in Hamilton County.

6. Personal jurisdiction is proper over the Defendant pursuant to R.C. § 2307.382(A)(1) and (4).

7. Venue is proper pursuant to Civ. R. 3(C)(1)(2)(3)(4) and/or (6).

8. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

9. Within two years of the conduct alleged below, Pugh filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC"), against Ensemble; Charge Numbers: DAY76(003039)11062023 ("Pugh Charge").

10. On or around July 18, 2024, the OCRC issued and mailed a Notice of Right to Sue letter to Pugh regarding the Charges of Discrimination brought by Pugh against Ensemble.

11. Pugh received his Right to Sue letter from the OCRC in accordance with R.C. § 4112.052.

12. Pugh has filed this Complaint within the statutory limitations of the issuance of the Notice of Right to Sue letter.

13. Pugh has exhausted his administrative remedies in accordance with R.C. § 4112.052.

## FACTS

14. Pugh is a former employee of Ensemble.

15. On or about February 20, 2017, Pugh was hired by Ensemble.

16. Pugh worked for Ensemble as a Bedded Insurance Authorization Representative and Pre-Access Representative.

17. Pugh is female.

18. In or about April 2023, Pugh found out she was pregnant.

19. In or about April 2023, Pugh informed Ensemble that she was pregnant.

20. In or about April 2023, Pugh asked for time off to accommodate doctor's visits.

21. In or about April 2023, Ensemble denied Pugh's time off requests.

22. During all relevant times, Pugh qualified for FMLA leave.

2

23. Pugh placed Ensemble on notice of the need for medical leave.

24. Ensemble was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C §2611(4).

25. At all times relevant herein, Pugh was employed by Ensemble for at least 12 months and had at least 1,250 hours of service with Ensemble and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

26. In or about May 2023, Pugh applied for FMLA leave.

27. In or about May 2023, Pugh was informed that her FMLA leave was approved for December 2023 and January 2024 for the birth of her child.

28. In or about June 2023, Pugh applied for intermittent FMLA leave.

29. In or about June 2023, Pugh was informed that her intermittent FMLA leave was approved.

30. Pugh informed her supervisors she had doctor's appointments on July 11, 2023, July 18, 2023, and August 16, 2023. ("Pugh's Request for Leave")

31. Pugh's Request for Leave was denied.

32. Judith Gushe denied Pugh's Request for Leave.

33. Gushe was Pugh's supervisor.

34. On or about July 18, 2023, Pugh attended a doctor's visit.

35. Pugh's supervisors were aware of Pugh's doctor's visit.

36. Pugh's supervisors were aware of her FMLA intermittent leave.

37. Pugh's supervisors added attendance points against her for attending a doctor's visit.

3

38. Under Ensemble policy, employees who utilized FMLA leave were not to be given attendance points.

39. On or about July 19, 2023, Pugh complained to Human Resources Director Joshua Wolfe about the attendance points being added to her employment record ("First Protected Complaint").

40. Pugh complained about pregnancy discrimination and FMLA interference.

41. On or about July 19, 2023, Pugh met with Wolfe and Gushe.

42. During the meeting, Pugh complained about pregnancy discrimination and FMLA interference ("Second Protected Complaint").

43. Ensemble has a policy requiring investigations following receipt of a complaint of discrimination.

44. An investigation should include interviewing the complainant.

45. An investigation should include interviewing the subject of the complaint.

46. An investigation should include interviewing the subject of the reported incident.

47. An investigation should include interviewing witnesses to the reported incident.

48. An investigation should include getting a written statement from the complainant.

49. An investigation should include getting a written statement from the subject of the complaint.

50. An investigation should include getting a written statement from the subject of the reported incident.

51. In response to Pugh's First and Second Protected Complaints, Defendant did not interview Pugh.

52. In response to Pugh's First and Second Protected Complaints, Defendant did not interview any of Pugh's coworkers or supervisors.

4

53. In response to Pugh's First and Second Protected Complaints, Defendant did not get a written statement from Pugh.

54. In response to Pugh's First and Second Protected Complaints, Defendant did not get a written statement from Pugh's coworkers or supervisors.

55. In response to Pugh's First and Second Protected Complaints, Defendant did not get any written statements from any Ensemble employees.

56. In response to Pugh's First and Second Protected Complaints, Defendant did not take corrective action.

57. In response to Pugh's First and Second Protected Complaints, Defendant did not take corrective action against her supervisors or any other Ensemble employees.

58. Ensemble ratified the discriminatory conduct in failing to conduct an investigation into Pugh's First and Second Protected Complaints.

59. Ensemble ratified the discriminatory conduct in failing to discipline anyone following Pugh's First and Second Protected Complaints.

60. Defendant targeted Pugh in retaliation for her First and Second Protected Complaints.

61. On or about July 19, 2023, Defendant terminated Pugh's employment with Ensemble ("Termination").

62. Ensemble has a progressive disciplinary policy.

63. Ensemble used a progressive disciplinary policy.

64. Ensemble used a progressive disciplinary policy for employees who are not pregnant.

65. Ensemble used a progressive disciplinary policy for employees who are not on FMLA.

66. Under the progressive disciplinary policy, Pugh had not been given a verbal warning related to the Stated Basis for Termination.

5

67. Under the progressive disciplinary policy, Pugh had not been given a written warning.

68. Under the progressive disciplinary policy, Pugh had not been given a final written warning.

69. Under the progressive disciplinary policy, Pugh had not been given a suspension.

70. Prior to terminating Pugh, Defendant never issued any written communication criticizing Pugh.

71. Defendant's termination of Pugh's employment was retaliation for Pugh's First and Second Protected Complaints.

72. Defendant terminated Pugh's employment because of Pugh's pregnancy.

73. Defendant terminated Pugh's employment because of Pugh's FMLA status.

74. Defendant terminated Pugh's employment because of her First and Second Protected Complaints of discrimination.

75. By terminating Pugh's employment, Defendant made it less likely for a reasonable employee to make a report or oppose conduct like discrimination.

76. The Termination of Employment constitutes retaliation.

77. The Termination of Employment constitutes pregnancy discrimination.

78. The Termination of Employment constitutes FMLA retaliation.

79. Defendant knowing skipped progressive disciplinary steps in terminating Pugh's employment.

80. Defendant knowingly terminated Pugh's employment.

81. Defendant knowingly took an adverse employment action against Pugh.

82. Defendant knowingly took an adverse action against Pugh.

83. Defendant intentionally skipped progressive disciplinary steps in terminating Pugh.

84. Defendant intentionally terminated Pugh's employment.

85. Defendant intentionally took an adverse employment action against Pugh.

86. Defendant intentionally took an adverse action against Pugh.

6

87. Defendant knew that skipping progressive disciplinary steps in terminating Pugh would cause Pugh harm, including economic harm.

88. Defendant knew that terminating Pugh would cause Pugh harm, including economic harm.

89. Defendant willfully skipped progressive disciplinary steps in terminating Pugh.

90. Defendant willfully terminated Pugh's employment.

91. There was a causal connection between Pugh's pregnancy and the Termination of Employment.

92. There was a causal connection between Pugh's FMLA status and the Termination of Employment.

93. There was a causal connection between Pugh's First and Second Protected Complaints and the Termination of Employment.

94. The Termination was an adverse employment action.

95. The Termination was an adverse action.

96. After Pugh's Termination, Ensemble replaced her with someone outside of her protected class.

97. After Pugh's Termination, Ensemble replaced her with someone who was not pregnant.

98. Defendant willfully took an adverse employment action against Pugh.

99. Defendant willfully took an adverse action against Pugh.

100. Defendant discriminated against Pugh because of her pregnancy.

101. Defendant discriminated against Pugh because of her FMLA status.

102. Defendant discriminated against Pugh because of her First and Second Protected Complaints.

103. As a result of Defendant's conduct, Pugh suffered, and will continue to suffer damages and will continue to suffer damages, including economic and emotional distress damages.

7

## COUNT I: <u>UNLAWFUL PREGNANCY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *et seq.*</u>
### <u>(Against Ensemble Only)</u>

104. Pugh restates each and every prior paragraph of this Complaint as if it were fully restated herein.

105. Under R.C. § 4112.02 it is unlawful for an employer to discriminate against an employee on the basis of sex.

106. R.C. § 4112.01(B) provides that the term "on the basis of sex" includes, but is not limited to, "on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions."

107. R.C. § 4112.01(B) further mandates that pregnant women shall be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.

108. Pugh informed Defendant of her pregnancy.

109. Defendant discriminated against Pugh because of her pregnancy.

110. Defendant terminated Pugh's employment because of her pregnancy.

111. As a direct and proximate result of Defendant' conduct, Pugh suffered and will continue to suffer damages, including economic and emotional distress damages.

112. Defendant' discrimination against Pugh based on her pregnancy violates R.C. § 4112.01 *et seq.*

113. Defendant' termination of Pugh based on her pregnancy violates R.C. § 4112.01 *et seq.*

## COUNT II:  <u>RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*</u>
### <u>(Against Ensemble Only)</u>

114. Pugh restates each and every prior paragraph of this complaint, as if it were fully restated herein.

8

115. As a result of Defendant' discriminatory conduct described above, Pugh complained about the discrimination she was experiencing.

116. Subsequent to Pugh's reporting of discrimination to Defendant and the Human Resources Department, Pugh's employment was terminated.

117. Defendant' actions were retaliatory in nature based on Pugh's opposition to the unlawful discriminatory conduct.

118. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

119. As a direct and proximate result of Defendant' conduct, Pugh suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
### (Against Ensemble Only)

120. Pugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

122. Ensemble is a covered employer under the FMLA.

123. During her employment, Pugh qualified for FMLA leave.

124. During her employment, Pugh requested FMLA leave.

125. Defendant failed to properly advise Pugh of her rights under the FMLA.

126. Defendant unlawfully interfered with Pugh's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

9

127. Defendant' act of adding attendance points against Pugh during her FMLA leave violated and interfered with Pugh's FMLA rights.

128. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Pugh's FMLA rights when Defendant did not honor Pugh's approved use of FMLA leave.

129. As a direct and proximate result of Defendant' conduct, Pugh is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT IV: RETALIATION IN VIOLATION OF THE FMLA
### (Against Ensemble Only)

130. Pugh restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. During her employment, Pugh utilized FMLA leave.

132. After Pugh utilized her qualified FMLA leave, Defendant retaliated against her.

133. Defendant retaliated against Pugh by terminating her employment.

134. Defendant willfully retaliated against Pugh in violation of U.S.C. § 2615(a).

135. As a direct and proximate result of Defendant' wrongful conduct, Pugh is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Courtney Pugh demands from Defendant the following:

(a) Issue a permanent injunction:

 (i) Requiring Ensemble to abolish discrimination, harassment, and retaliation;

10

      (ii)      Requiring allocation of significant funding and trained staff to implement all changes within two years;

      (iii)     Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

      (iv)     Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      (v)      Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Ensemble to restore Pugh to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Pugh for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Pugh's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

11

Respectfully submitted,

/s/ Trisha Breedlove
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
          greg.shumaker@spitzlawfirm.com


*Attorneys For Plaintiff*
*Courtney Pugh*

12

## JURY DEMAND

Plaintiff Courtney Pugh demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)

13